*Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**KEVIN ANTHONY BETTALE and MICHAL MARIE BETTALE,**<br><br>Debtors. | Case No. **21-20074-BPH** |
| **GREGORIO SMITH,**<br><br>Plaintiff.<br><br>-vs-<br><br>**KEVIN ANTHONY BETTALE,**<br><br>Defendant. | Adv. No. **21-ap-02006-BPH** |

## MEMORANDUM OF DECISION AFTER TRIAL

### Introduction

In this adversary case, Gregorio Smith ("Smith") seeks to except from Debtor's discharge an alleged debt related to Debtor's acquisition of a boat. Smith seeks relief pursuant to §§ 523(a)(4), and (6).[1] Additionally, at the time of trial, Smith emphasized Debtor's "unclean hands," were a basis for excepting the debt from discharge.

The Court conducted a trial on May 5, 2022. Appearances were noted on the record. Plaintiff Smith and Defendant Kevin Bettale ("Debtor") testified. The Court denied Smith's request to have Randall Hicks ("Hicks") testify via telephone because Smith failed to comply with Mont. LBR 5074-1(a)-(b). Smith's Exhibit 5 was admitted without objection. Debtor's

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

Exhibits A, B, and C were admitted without objection. Based on the record developed before this Court, the following constitute findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

**Facts[2]**

**I.     Debtor's Purchase of the Boat.**

The dispute in this adversary proceeding arises from Debtor's purchase of a 43' vessel named the Adventuress ("Boat") in Galveston, Texas, from Wayne Langston ("Langston") in 2015. Smith purportedly had a possessory interest in the Boat at the time of sale from Langston to Debtor. Smith alleges the sale was an intentional act by Debtor to defraud him of that possessory interest or otherwise steal the Boat from him.

Smith asserts Langston previously sold the Boat to Randall Hicks who then sold it to Blanca Casaubon ("Casaubon"), Smith's ex-wife. Casaubon purportedly authorized Smith to act as her agent regarding the Boat. Smith advertised the Boat for sale online. Debtor responded to the advertisement and expressed interest in purchasing the Boat. At the time, Debtor's son Brian Bettale ("Brian") lived in Texas. Brian had contact with Smith and assisted Debtor with his purchase of the Boat.

During negotiations, Smith was unable to establish he owned the Boat. Debtor expressed concerns about the state of the title. Smith engaged Carol Matthews Title Co. ("Carol Matthews") in connection with resolving the title issues and conveying the Boat to Debtor. When Carol Matthews was unable to resolve the issues or otherwise sort through the Boat's ownership history to Debtor's satisfaction, Debtor engaged a marine document specialist, SeaMark Vessel Documentation ("SeaMark").

SeaMark informed Debtor that the Boat had a record owner named Wayne Langston who had become full owner upon the death of his wife, Patricia Langston. SeaMark provided Debtor with various documents showing Wayne Langston was the owner, including an Outboard Motor Ownership Inquiry.[3] None of the documents referred to Smith or Casaubon.

Debtor did not want to merely acquire a possessory interest in the Boat. He wanted to acquire ownership of the Boat. Based on the information obtained from SeaMark, Debtor purchased the Boat from Langston, not Smith. The purchase was memorialized in a Bill of Sale dated February 25, 2015.[4]

---

[2] The parties do not dispute the relevant and material facts in any substantive way, with one exception, debtor's mental state at the time of the sale. This is the only issue the parties vigorously dispute.
[3] Ex. C at ECF No. 67-3.
[4] Ex. A at ECF No. 67-4.

## II. Texas Litigation

After Debtor purchased the Boat from Langston, Smith sued Brian in Texas state court in 2015. The lawsuit alleged Brian was liable for conversion and theft of property among other things. Brian moved for, and was granted, summary judgment. After Smith failed to appear at a hearing on the remaining claims, the court entered a final judgment dismissing the lawsuit.

Three years later, in 2018, Smith filed a second lawsuit against Brian.[5] This time, he also named Debtor as a defendant. This second lawsuit alleged breach of contract and similar claims, generally asserting that Debtor and his son Brian stole the Boat from Smith. Both Brian and Debtor moved the court for summary judgment on the grounds of *res judicata* and collateral estoppel. The court granted Brian's motion for summary judgment. However, the court denied Debtor's motion for summary judgment.[6] The action proceeded against Debtor. Shortly before trial, Debtor and his wife Michal Bettale filed Chapter 7 bankruptcy.[7]

## III. The Adversary Proceeding

The complaint in this adversary proceeding generally seeks to except from discharge any debt associated with the claims asserted in the Texas Litigation. More specifically, in the adversary complaint Smith characterizes Debtor's alleged conduct as larceny and "surreptitious theft." Debtor moved this Court for summary judgment on the grounds of res judicata and collateral estoppel. The Court denied summary judgment because the question of Debtor's mental state for purposes of §§ 523(a) (4) and (6) was a factual determination that was both contested and not previously adjudicated.

## **ANALYSIS**

There are two distinct steps to the exception to discharge analysis: (1) establishing the existence of a debt, subject to the applicable state statute of limitations; and (2) a determination of whether the established debt is excepted from discharge. *Banks v. Gill Distribution Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001). A creditor objecting to the dischargeability of a specific debt bears the burden of proving, by a preponderance of the evidence, that the debt exists, and that the debt falls within one of the exceptions to discharge enumerated in § 523(a). *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

The exceptions to discharge, set out in § 523(a), except from discharge certain "debts." Relevant here, § 523(a)(4) and (6) provide: "A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from <u>any debt</u> . . . (4) for . . . larceny; [or] . . . (6) for willful and malicious injury by the debtor . . ." (emphasis

---

[5] Smith's second action was filed on October 30, 2018, in the 122nd District Court, Galveston County, Texas. 18-CV-1511. ECF No. 26, p. 385–399 ("Texas Litigation").

[6] The order granting summary judgment in the Texas Litigation is devoid of any discussion regarding Debtor's mental state at the time of the disputed transaction. ECF No. 26 p. 438.

[7] Co-debtor Michal Bettale was initially named as a co-defendant but was dismissed by Smith prior to trial. ECF No. 45.

3

added). It follows that for an alleged creditor to except a "debt" from discharge under § 523(a), the alleged creditor must first establish the existence of a debt. *Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998) (existence of a debt is a "threshold condition" to an exception under § 523(a)).

If a debt is established, a creditor must show that the debtor acted with the requisite mental state in order to prevail in excepting that debt under § 523(a)(4) or (6). *In re Ormsby*, 591 F.3d 1199, 1205-09 (9th Cir. 2010). Under § 523(a)(4), Smith must show Debtor acted with felonious intent. *Id.* at 1205. Similarly, under § 523(a)(6), Smith must show Debtor had "a subjective motive to inflict injury or believed the injury was substantially certain to result from his conduct." *Id.* at 1209.

Smith's unclean hands argument merits little consideration. The doctrine of unclean hands is not a valid exception to discharge, as exceptions to discharge are confined to those plainly expressed in § 523. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275-76 (2013). Accordingly, the questions presented to the Court are whether the Debtor in fact owes Smith a debt, and, if so, whether that debt is excepted from discharge under either § 523(a)(4) or § 523(a)(6).

### I. Smith has established the existence of a debt within the Texas statute of limitations.

The first prong of the exception to discharge analysis is a statute of limitations inquiry, requiring the Court to determine if the plaintiff has established a debt owed to him by the defendant within the applicable state statute of limitations. *Banks*, 263 F.3d at 867-68. Under the Bankruptcy Code, "debt" is defined as "liability on a claim." § 101(12). Further, "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" § 101(5). As explained by a leading commentator, "That is, a creditor has a "claim" against the debtor and the debtor owes a "debt" to the creditor." 2 Collier on Bankruptcy P 101.12 (16th 2022). Notably, "[n]othing under the Bankruptcy Code requires a debt to have been reduced to a pre-petition state court judgment." *Banks*, 263 F.3d at 868.

Timely filing a pre-petition lawsuit in state court may establish a debt. *Id*. As one court noted, under 9th Circuit law,

> the establishment of the debt for statute of limitations purposes does not require the entry of a judgment on the debt. Even if the state statute of limitations for fraud, upon which the debt is predicated, has passed or "run" prior to the filing of the bankruptcy case, the debt is still deemed "established" pre-petition, if the creditor has taken a timely affirmative act which is necessary to the creditor's ability to collect the debt in a manner provided by law. Therefore, it is not necessary for the Plaintiff to obtain a pre-petition state court judgment within the relevant statute of limitations; simply commencing the underlying court action is sufficient.

*Robertson v. Denton (In re Denton)*, 2009 LEXIS 426, at *59 (Bankr. D. Ariz. 2009); *see also In re Perez*, 415 B.R. 546, 551 (Bankr. D. N.M. 2009) ("timely filing of the plaintiff's underlying state court action was sufficient to establish a debt"); *In re Morgan*, 2014 WL 3749156 at *2 (Bankr. D. Nev. 2014) (plaintiff did not file a pre-petition lawsuit in state court and therefore "did not 'establish' his debt pre-petition").

In this case, Smith filed the Texas Litigation and alleged the Boat was stolen from him by Debtor. The Texas Litigation was filed within the applicable statute of limitations. TX Civ Prac. & Rem § 16.004; *See also Banks*, 263 F. 3d at 868. Although disputed by Debtor, the operative complaint in the Texas Litigation sets forth Smith's claim and provides the basis for a debt that is subject to a discharge determination under § 523.

Debtor argues that Smith's mere possessory interest in the Boat at the time of sale was insufficient to form the basis of a debt owed to Smith. Indeed, Debtor may very well have strong grounds to dispute Smith's claim. However, by its very definition, a "claim" may be disputed. § 101(5). Further, claims under the Code include a "right to payment, whether or not such right is reduced to a judgment." *Id*. The law does not require Smith to reduce his right to payment to judgment prior to filing the petition. Instead, the law merely requires the establishment of a debt through a timely affirmative action by Smith. Smith has done so through the Texas Litigation.

Although scrutiny of Smith's prepetition state court complaint might reveal deficiencies with the manner in which Smith set forth his causes of action, "under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca,* 652 F.3d 1202, 1212 (9th Cir. 2011). Further, the Court has a duty to construe *pro se* filings liberally. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). Accordingly, for purposes of the analysis here, Smith has established the existence of a debt under the Texas statute of limitations.

## II. Any alleged debt is not excepted from discharge.

Under the second prong of the exception to discharge analysis, the Court must determine whether the established debt is excepted from discharge. *Banks*, 263 F.3d at 868. A discharge in a chapter 7 bankruptcy effectively wipes away all pre-petition debts and liabilities on claims, subject to certain exceptions expressly stated in the Code. § 727(b). Separately, a creditor may have a specific debt excepted from discharge under § 523. *Id.* Smith seeks to have his alleged debt excepted from discharge under § 523(a)(4) or § 523(a)(6). To prevail, Smith must show by a preponderance of the evidence that one of those exceptions apply. *Grogan*, 498 U.S. at 291. Smith has failed to prove that exceptions under either § 523(a)(4) or § 523(a)(6) apply.

### A. § 523(a)(4) does not apply.

The Code excepts from discharge any "debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Debtor was nether acting in a fiduciary capacity, nor does Smith allege in any cogent way embezzlement is at issue, so larceny is the operative term in subsection (a)(4) that the Court must consider. The Ninth Circuit Court of Appeals has explained that "a bankruptcy court is not bound by the state law definition of

5

larceny but, rather, may follow federal common law." *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir. 2010). Under the federal common law, larceny is defined as "a felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Id.* Further, the *Ormsby* court defined "felonious" as "proceeding from an evil heart or purpose; malicious; villainous . . . wrongful; (of an act) done without excuse of color of right." 591 F.3d at 1205, n. 4.

Here, Smith's assertion that the alleged debt arose from larceny is misplaced. Nothing in the record reflects Debtor's actions at the time of the disputed transaction were "proceeding from an evil heart or purpose." To the contrary, Debtor proceeded cautiously and investigated Smith's representations that he had a right to sell the Boat to Debtor. Debtor obtained a title search from a maritime document specialist to assure himself that he acquired the Boat from its owner. Debtor testified that, when making his purchase of the Boat, he relied on the ownership inquiry and other documentation assembled by SeaMark. SeaMark's investigation showed Langston was the registered owner. This level of inquiry is not indicative of an evil heart or purpose, malice, or villainy. Debtor's diligence and investigation undermine Smith's argument that Debtor obtained the boat "without excuse of color of right." The Court cannot conclude Debtor acted with felonious intent when he decided to acquire the Boat from Langston, rather than Smith. As a result, § 523(a)(4), does not provide a basis to except the alleged debt from discharge.

### B. § 523(a)(6) does not apply.

The Code also excepts from discharge any "debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." § 523(a)(6). The word "willful" as used in § 523(a)(6) modifies the word "injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). For § 523(a)(6) to apply, the debtor must intend the consequences of the act, not simply the act itself. *Id.* A creditor seeking to establish nondischargeability under § 523(a)(6) must establish both willfulness and maliciousness. *In re Ormsby*, 591 F.3d at 1206.

#### 1. Debtor did not willfully injure Smith.

In the Ninth Circuit, the "willful injury" requirement is satisfied only if "the debtor has a subjective motive to inflict injury or when the debtor believes the injury is substantially certain to result from his own conduct." *Id.* at 1209. Although the "willful" standard is a subjective one, "the Debtor is charged with the knowledge of the natural consequences of his actions." *Id.* at 1206. "The subjective standard poses a problem for creditors. It is always difficult to prove a person's subjective state of mind. If the debtor denies having the required intent or subjective knowledge (and debtors almost always do so), the creditor has the right to challenge the credibility of that denial." *Serrao v. Picanco (In re Picanco)*, 2003 WL 22946440 *2 (Bankr. D. Haw. 2003).

Debtor testified he did not intend to injure Smith when he acquired the Boat from Langston. Debtor testified that he would have purchased the Boat from whomever was the rightful owner. Based on the title searches, Debtor believed Langston owned the Boat. Smith's argument that Debtor's knowledge of his alleged possessory interest in the Boat made Debtor

"substantially certain" that injury to Smith would result from the purchase from Langston is not convincing.

First, evidence of Smith's interest in the Boat was entirely dependent on his own testimony. Although the Court will not characterize the testimony as entirely self-serving, the Court would have benefitted from the testimony of Langston, Casaubon, and Hicks. Absent the testimony of these third parties regarding the underlying transactions, the Court cannot conclude that Smith had a superior right or interest in the Boat, the loss of which would result in "substantial certainty of injury" to Smith.

At its best, the underlying basis of Smith's alleged possessory interest in the Boat is murky. The Court is not persuaded that Smith had any cognizable interest that would have prevented Langston from selling the Boat to Debtor at the time of the transaction. If in fact, Langston sold the Boat twice, first to Hicks and then to Debtor, Langston would be the bad actor in the transaction, not Debtor.

After investigating the records, Debtor elected to acquire the Boat from the individual best suited to deliver title to him, Langston, not Smith. Under these circumstances, Smith has not established that injury to him was a substantial certainty attributable to Debtor's decision to purchase the Boat from Langston. Smith has failed to prove Debtor's conduct met the willful element of § 523(a)(6).

### 2. Debtor's conduct did not maliciously injure Smith.

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Ormsby*, 592 F.3d at 1207. "Malice may be inferred based on the nature of the wrongful act. To infer malice, however, it must first be established that the conversion was willful." *Id.* (internal citations omitted).

As stated above, Smith failed to establish that Debtor's conduct was a willful injury of Smith. Even if he had, Debtor's reliance on the records searches and representations of the maritime document specialist provided "just cause or excuse" to purchase the Boat from Langston. Any resulting injury to Smith was justified or excused based on Debtor's diligence and research. The Court cannot conclude that Debtor's purchase of the Boat from Langston rises to the level of maliciousness necessary to except the alleged debt from discharge under § 523(a)(6).

## Conclusion

Smith established the existence of a debt owed to him by Debtor through the timely filing of the Texas Litigation. However, Smith failed to prove Debtor had the requisite mental state under § 523(a)(4) or (6). Accordingly, the alleged debt is not excepted from discharge. An Order will be entered separately.

Dated October 5, 2022.

BY THE COURT:

_____
Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

8